IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| GLADYS CAJINA, | : |
| | : |
| Claimant, | : |
| | : |
| v. | : CASE NO. 4:12-CV-36-CDL-MSH |
| | : Social Security Appeal |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| | : |
| Respondent. | : |
| _____ | |

## **REPORT AND RECOMMENDATION**

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for disability insurance benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## **LEGAL STANDARDS**

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this

court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it.  *Id.*

The claimant bears the initial burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir.1986).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2]  A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

twelve-month period.  42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. § 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner determines whether the claimant is working.  *Id.*  If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  *Id.*  Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments.  *Id.*  Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listing").  *Id.*  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## Administrative Proceedings

Claimant applied for disability insurance benefits on May 23, 2008, alleging

disability April 1, 2003, due to an irregular heartbeat, aortic valve leak, thyroid issues, and cancer. (Tr. 160; ECF No. 7.) Claimant's application was denied, and Claimant timely requested a hearing before an Administrative Law Judge ("ALJ"). The Claimant appeared before an ALJ for a hearing on March 29, 2011, and following the hearing, the ALJ issued an unfavorable decision on July 7, 2011. (Tr. 22-31.) The Appeals Council ultimately denied Claimant's Request for Review on December 15, 2011. (Tr. 1-3.) This appeal followed.

## Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since her alleged onset date. (Tr. 12.) The ALJ found that Claimant had a cervical spine disorder, history of carpal tunnel syndrome, hypertension, asthma, history of breast cancer, thyroid disorder, scoliosis, and gastritis, which were determined to be severe. (*Id.*) The ALJ then determined that Claimant's severe impairments did not meet or medically equal, either individually or any combination, any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 13.)

The ALJ next found that Claimant had the residual functional capacity (RFC) to perform light work with the following limitations: she could perform simple, routine, repetitive tasks; she could occasionally climb ladders, ropes, and scaffolds; she could frequently handle and finger with both hands; she could frequently push and pull with both her arms and legs; and she should not have concentrated exposure to pollutants, gas, dust, and other lung irritants (Tr. 14). In the decision, the ALJ noted that although

Claimant alleged she became disabled on April 1, 2003, there are no medical records from the year 2003, and only one from 2004. (Tr. 14.) The ALJ further noted that there were no other medical records until 2007. (*Id.*) The ALJ acknowledged that Claimant did supply significant medical records for the period after her last date insured, December 30, 2008, but noted that those records were not relevant as they were from a time period outside of the period of eligibility. (Tr. 15.)

Based on her RFC and the medical evidence, the ALJ then determined that Claimant would be unable to perform her past relevant work as a computer technician. (Tr. 17.) The ALJ determined that at the time, Claimant was 50 years old, which is considered to be closely approaching advanced age. (*Id.*) The ALJ further found that Claimant had a high school education and could communicate in English. (*Id.*) After consulting the Medical-Vocational Rules (GRIDS), the ALJ determined that Claimant was not disabled within the meaning of the Regulations and that there were jobs available which existed in significant numbers that Claimant could perform.

## ISSUES

I. **Whether the ALJ erred in not utilizing the testimony of a Vocational Expert.**

II. **Whether the ALJ erred in determining Claimant's residual functional capacity (RFC).**

## DISCUSSION

I. **Whether the ALJ erred in not utilizing the testimony of a Vocational Expert.**

Claimant first alleges that the ALJ erred in failing to consult a vocational expert ("VE") after imposing significant non-exertional limitations on Claimant's ability to

work. (Cl.'s Br. 4; ECF No. 8.) The United States Supreme Court has held that "exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements)." *Heckler v. Campbell*, 461 U.S. 458 (1983). Likewise, the Eleventh Circuit held that an ALJ may use the Medical Vocational Guidelines (Grids) in lieu of vocational testimony on specific jobs so long as: 1) the claimant is able to perform a full range of work at a given functional level; 2) the claimant has no nonexertional impairments that significantly limit basic work skills; and 3) the claimant has no nonexertional limitations severe enough to preclude a wide range of employment at the given exertional level. *Martin v. R.R. Ret. Bd.*, 935 F.2d 230, 234 (11th Cir. 1991); *See also Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992). Reliance on the grids is proper where substantial evidence supports the ALJ's determination that the claimant's non-exertional impairments did not significantly limit his ability to perform specified types of work. *Sryock v. Heckler,* 764 F.2d 834, 836 (11th Cir.1985) (per curiam).

As noted above, the ALJ in this case found at step three that Claimant had the residual functional capacity (RFC) to perform light work with the following limitations: she could perform simple, routine, repetitive tasks; she could occasionally climb ladders, ropes, and scaffolds; she could frequently handle and finger with both hands; she could frequently push and pull with both her arms and legs; and she should not have concentrated exposure to pollutants, gas, dust, and other lung irritants. (Tr. 14.) Thereafter, at step five, the ALJ stated that the opinion of the state agency medical consultants, the medical evidence, and the Claimant's subjective complaints of pain were

reviewed in order to determine that her impairments, both exertional and non-exertional, would allow her to perform the requirements of the full range of light work. (Tr. 25.) Specifically, the ALJ stated that

> If the Claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of these rules.

(Tr. 17-18.)

Exertional impairments are those that affect the claimant's "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). Furthermore, the Social Security Administration ("SSA") states that "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations." *See* Programs Operations Manual System ("POMS") § DI 24515.063.B.[3] Nonexertional limitations are limitations or restrictions imposed by an impairment that affect a claimant's ability to meet the demands of jobs other than strength demands. 20 C.F.R. §§ 404.1569a(c). The SSA further states that

> When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the

---

3   "POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits and is located online at http:policy.ssa.gov." *Brown v. Barnhart*, 410 F. Supp. 2d 1287, 1298 n. 6 (S.D. Fla. 2006).

> demands of jobs other than the strength demands, we consider that you have only nonexertional limitations or restrictions. Some examples of nonexertional limitations or restrictions include the following:
>
> a.  You have difficulty functioning because you are nervous, anxious, or depressed;
> b.  You have difficulty maintaining attention or concentrating;
> c.  You have difficulty understanding or remembering detailed instructions;
> d.  You have difficulty in seeing or hearing;
> e.  You have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or
> f.  You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

*Id.* at § DI 24515.063.C.  Nonexertional impairments such as depression, anxiety, difficulty concentrating or remembering are defined as all other impairments that do not affect a claimant's ability to meet the strength demands of jobs. 20 C.F.R. § 404.1569a(c)(1).

Here, the only exertional limitation placed upon Claimant in the ALJ's RFC assessment was that she could "frequently push and pull with both her arms and legs." (Tr. 15.)  The remaining limitations as found by the ALJ were non-exertional. "Light work" is defined in the Regulations as "work involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with *some pushing and pulling of arm or leg controls*."  20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added).  Thus, the ALJ's limiting Claimant to frequent pushing/ pulling with

both her arms and legs does not preclude her from performing the full range of light work.

Regarding the non-exertional limitations as found by the ALJ, the question that must be answered is whether substantial evidence supports the ALJ's findings that Claimant's non-exertional impairments do not limit her ability to perform light work. *See Perry v. Astrue*, 280 F. App'x 887, 895 (11th Cir. 2008). As noted above, the ALJ found Claimant to have the following non-exertional limitations: that Claimant could perform simple, routine, and repetitive tasks; occasionally climb ladders, ropes, and scaffolds; frequently handle and finger with both hands; and that she should not have concentrated exposure to pollutants, gas, dust, and other lung irritants. (Tr. 14.)

The Grids represent unskilled work. See 20 C.F.R. Pt. 404, Sub. P., Appx. 2, § 200.00(b). "[A] limitation to simple tasks require[s] no additional treatment from the ALJ because '[u]nskilled work is work which needs little or no judgment to do simple duties that can be leaned on the job in a short period of time.' " *Vuxta v. Comm'r of Sec. Sec.*, 194 Fed. App'x 874, 878 (11th Cir. 2006). Claimant argues that there are multiple reasons why this case should be remanded for the ALJ's failure to elicit VE testimony and instead, to rely on the grids in finding that Claimant was not disabled.

  **A.**  **Consistency of the ALj's Findings**.

Claimant argues that "[w]hile [the ALJ] implies that Cajina retains the ability to perform a wide range of light work when she attempts to justify her failure to consult a vocational expert, she claims that Cajina was restricted to a limited range of light work when attempting to justify the RFC assessment." Claimant contends that the ALJ cannot

have it both ways. (CL.'s Br. 14.) Although Claimant is correct that ALJ did state that she was restricting Claimant to "a limited range of light work" to account for the physical impairments that she found to exist in her RFC assessment, Claimant's argument is meritless. The phrase "limited range of light work" as used in the ALJ's determination was merely her way of showing that she accounted for Claimant's pain allegations in determining her RFC. A remand to have the ALJ perfect the record in this instance would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *see also Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000) ("a remand is not essential if it will amount to no more than an empty exercise").

### B.      Due Process Violation

Claimant also argues that the ALJ's findings fail on due process grounds. She relies on a Third Circuit Court of Appeals decision which held that a disability claimant "had no opportunity here to see the evidence (if any) on which the ALJ relied to determine that the lack of binocular vision does not significantly diminish the occupational base for light and no opportunity to challenge that conclusion in the hearing." *Sykes v. Apfel*, 228 F. 3d 259, 273 (3rd Cir. 2000). No Eleventh Circuit precedent, however, requires an ALJ to give a claimant notice if she plans to find that the claimant's non-exertional limitations do not significantly erode the occupational base of unskilled work. Thus, this claim is also found to be meritless.

### C. Reliance on the Grids contrary to the Regulations.

Claimant next argues that the ALJ's reliance on the Grids was erroneous because Claimant had both "exertional and non-exertional limitations that prevent her from performing a full range of work at a given exertional level." (Cl.'s Br. 11.) Thus, Claimant contends the ALJ was required to give "full consideration" to "all relevant facts" in Claimant's case to determine whether she was disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) (2012). The Eleventh Circuit, in relying on 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) has recently found that

> "[i]f a claimant has a combination of exertional and nonexertional limitations, the grids "are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the [grid rules] provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional impairments."

*Lapica v. Comm'r of Soc. Sec.*, 2012 WL 6571081, *2 (11th Cir. Dec. 14, 2012).

The record in this case reveals that the ALJ, using Claimant's age, education and past work history, applied the appropriate grid section. Thus, 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) was appropriately met. Then, because the ALJ found that Claimant's assessed non-exertional limitations did not prevent her from performing a full range of light work, she was able to rely exclusively on the grids without consulting a VE. The Regulations state that only when the "combinations of nonexertional and exertional limitations which cannot be wholly determined under" the grids, must "full consideration [] be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations,

which will provide insight into the adjudicative weight to be accorded each factor." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). *If* the issue of occupational base erosion is complex, the ALJ "*may* use the services of a vocational expert or other specialist." 20 C.F.R. § 404.1566(e); see also S.S.R. 83–14 (stating that in complex situations, "the assistance of a vocational resource may be necessary") (emphasis added). Here, the use of a VE was not deemed necessary by the ALJ, and as such, Claimant's reliance on the dictates of 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) to support a claim that the ALJ erred must fail.

### D. ALJ's assumptions contrary to Eleventh Circuit law.

Claimant next argues that the ALJ's "assumptions" that her non-exertional limitations did not significantly impact her ability to perform the full range of light work is contrary to prevailing Eleventh Circuit law. Claimant cites *Francis v. Heckler* to support her contention. Specifically, in *Francis,* the Court found that "the ALJ nevertheless applied the grids because he was 'persuaded' that [vision problems] did not significantly limit the range of medium work available to claimant. Yet there is no vocational testimony upon which the ALJ could have relied to be so persuaded. *Francis v. Heckler*, 749 F. 2d 1562, 1567 (11th Cir. 1985). Claimant further relies on the holding in *Allen v. Sullivan* which held that "it is only when the claimant can clearly do unlimited

types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200 (11th Cir. 1989).[4]

However, in a more recent decision, the Eleventh Circuit held that "[w]hen considering [Claimant's] nonexertional limitations, the ALJ *need only determine whether* [her] nonexertional impairments significantly limit her basic work skills." *Phillips v. Barnhart*, 357 F.3d 1232, 1243 (11th Cir. 2004) (citations omitted) (emphasis added); *see also Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, **4 (11th Cir. 2008) (remanding the district court's decision because the ALJ failed to make specific findings in support of his conclusion that the Claimant could perform the full range of sedentary work). In the instant case, the ALJ discounted Claimant's testimony concerning the incapacitating effects of her impairments. Ultimately, the ALJ considered the medical and other evidence of record and concluded that Claimant "had the residual functional capacity to perform the full range of light work." (Tr. 17.) Thus, pursuant to prevailing Eleventh Circuit law, where an ALJ makes a specific determination as to whether Claimant's non-exertional limitations significantly impact her basic work skills, no error can be found. Such is the case here.

> **E.** **Case law and Commissioner's rulings contrary to ALJ's conclusions.**

---

4    Of note, the claimant in *Allen* was found to have severe impairments including borderline intellectual functioning. *Allen v. Sullivan*, 880 F. 2d at 1202. The case was remanded because the Court determined that The ALJ "should have elicited testimony from a vocational expert to interpret and evaluate appellant's medically documented non-exertional psychological and emotional limitations." *Id.* In the instant case, Claimant did not allege any mental limitations in her disability application, nor did the ALJ find that Claimant had any severe mental or psychological impairments.

Claimant also contends that because the ALJ limited her to not only simple and routine tasks, but also to repetitive tasks, vocational expert testimony was required. (Cl's Br. 16.) Claimant argues that "[w]hile the RFC considered under each Grid Rule includes 'all or substantially all' of the unskilled occupations existing at the exertional level in question, the Eleventh Circuit . . . acknowledged that not all unskilled work is repetitive, so the ALJ cannot just assume that a limitation to repetitive work is subsumed by the limitation to unskilled work." (*Id.*) Claimant cites to two Eleventh Circuit decisions to support her argument. *See*, *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 878 (11th Cir. 2006); *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959, 961-62 (11th Cir. 2010).

In *Vuxta*, the ALJ limited the Claimant to simple repetitive tasks and relied upon the grids to find that she was not disabled. The Court, in remanding the case, noted that although a limitation to simple tasks in contemplated within the definition of unskilled work, the limitation to repetitive work is not. *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x at 878. *Vuxta* went on to hold that the ALJ must clarify whether a limitation to repetitive tasks would preclude Claimant from performing a wide range of work at the light exertional level. *Id.* Here, the ALJ specifically made such a finding when he stated that the "additional limitations" he placed on Claimant "had little or no effect on the occupational base of unskilled light work." (Tr. 18.) Thus, Claimant's argument must fail.

In the end, the ALJ specifically determined that Claimant had no non-exertional limitations which would significantly limit her ability to perform work, and thus, use of

the grids to determine disability in this case does not constitute error. Because substantial evidence supports the ALJ's finding that the Claimant's non-exertional limitations would not "significantly limit" her ability to engage in a wide range of light employment, the ALJ did not err by relying on the grids to find that Claimant was not disabled.

## II.   Whether the ALJ erred in determining Claimant's residual functional capacity (RFC).

Lastly, Claimant contends that the ALJ erred in failing to explain how her gastrointestinal condition, which was deemed a severe impairment, was reflected in the RFC assessment. (Cl.'s Br. 18.) Claimant further argues in this issue that the ALJ's restriction of her to a limited range of light work addressed her gastritis, neck pain, scoliosis, and thyroiditis, without explaining on a function-by-function basis how "the symptoms imposed by these severe impairments would permit Cajina to perform limited light work on a regular and consistent basis." (*Id.*) Claimant contends this violated SSR 96-8p and requires remand. (*Id.*)

As to her gastritis claim, Claimant argues that the ALJ's finding that the relevant treatment notes did not reflect "pain and impairment that would preclude work activity" was erroneous because a severe impairment "need not be so severe as to preclude all work." (*Id.*) Claimant further contends that even though test results which showed "aphthous ulcerations especially in the terminal ileum suggesting Crohn's disease" were not in existence until June 2009, Claimant's symptoms were present during the relevant time period. (*Id.*) Thus, Claimant contends that the ALJ erred in failing to state how her gastritis was reflected in the RFC. (*Id.*)

15

The record reveals that after noting the lack of treatment notes from the relevant time period for her complaints of pain and nausea due to gastritis, the ALJ found that the relevant treatment notes did "not reflect pain and impairment that would preclude work activity." (Tr. 15.)  The ALJ then noted that she had addressed Claimant's various physical impairments by restricting the claimant to a limited range of light work.  (*Id.*) Thus, Claimant's contention that her gastritis was not addressed is meritless.

As to Claimant's contention that the ALJ failed to perform a function-by-function analysis of the effects of her severe impairments, Social Security Ruling 96-8p, as noted by Claimant, states, in relevant portion, that:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

The Regulations further state that where an ALJ finds that the Claimant's impairments do not meet a relevant Listing, she is required to make a determination as to whether the Claimant still has the residual functional capacity to engage in gainful employment by returning to former work or performing other work which he would be able to perform taking into consideration any limitational impairments.  20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling 96-8p.  In making her assessment in this case, the ALJ considered all of Claimant's symptoms, including her allegations of pain, and the extent to which these symptoms could reasonably be considered consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 416.929,

and Social Security Ruling 96-7p.  (Tr. 14.)   The ALJ also considered the medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.  20 C.F.R. § 416.927 and Social Security Rulings 96-2p and 96-6p.  (Tr. 14-17.)

Ultimately, the ALJ determined that Claimant had the residual functional capacity to perform simple, routine, repetitive tasks; she could occasionally climb ladders, ropes, and scaffolds; she could frequently handle and finger with both hands; she could frequently push and pull with both her arms and legs; and she should not have concentrated exposure to pollutants, gas, dust, and other lung irritants.  (*Id.*)  Thus, no error is found as to Claimant's contention that the ALJ failed to properly comply with SSR 96-8p in determining her residual functional capacity.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.  Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this, the 8th day of February, 2013.

S/ STEPHEN HYLES
UNTED STATES MAGISTRATE JUDGE